IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19- |
| v. | : | DATE FILED: |
| RANDY LEE SWACKHAMMER | : | VIOLATIONS:<br>18 U.S.C. § 1349 (conspiracy to commit health care fraud – 1 count)<br>Notice of forfeiture |
| | : | |

## **INFORMATION**

### COUNT ONE

**(Conspiracy to Commit Health Care Fraud)**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this Information:

**The Medicare Program**

1. The Medicare Program ("Medicare") was a federal health program providing benefits to persons who were sixty-five years of age or older, or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

2. Medicare was subdivided into multiple Parts. Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"). Parts A and B were known as the "original fee-for-

1

service" Medicare program, in which Medicare paid health care providers fees for services rendered to beneficiaries.

3. Specifically, Part B of the Medicare program was a medical insurance program that covered, among other things, certain DME such as orthotic devices, which included rigid and semi-rigid devices such as ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "orthotics").

4. CMS contracted with private companies called Medicare Administrative Contractors (hereinafter, "MACs") to receive, adjudicate, and pay Medicare Part B claims submitted by participating health care providers and suppliers. The MACs processed applications from medical providers seeking enrollment in the Medicare program. Once the MAC reviewed and approved an application, a provider received a unique provider number, referred to as a National Provider Identifier (hereinafter, "NPI") or previously, a Unique Provider Identification Number. The provider number was required for all claims submitted by the provider for payment.

5. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

6. According to Local Coverage Determination for Knee Orthoses (L33318), which has been adopted nationally for services performed on or after October 1, 2015, knee braces including L1381, L1386, L1832, L1833, L1843, L1845, L1850, L1851 and L1852 require an in-person examination of the patient. The LCD states that knee braces are medically necessary only where knee instability is documented by an in-person examination of the beneficiary and objective description of joint laxity (e.g., varus/valgus instability, anterior/posterior Drawer test). Claims are not reasonable and necessary if only pain or a subjective description of joint instability is documented.

7. Medicare would generally pay a substantial portion of the cost of the DME or related health care benefits, items, and services if they were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers, including nurse practitioners and physician assistants.

**The Defendant and Related Entities**

8. Defendant RANDY LEE SWACKHAMMER was a resident of the State of North Carolina and a medical doctor licensed by the states of North Carolina, Louisiana, West Virginia, and the Commonwealth of Pennsylvania to practice medicine.

9. A purported call center, which was supposed to serve as a centralized office for receiving and transmitting a large volume of requests by telephone, referred to as "Call Center Company A," was a Delaware corporation authorized to transact business in Florida.

10. A purported telemedicine company, which was supposed to provide via licensed medical professionals limited medically necessary services to beneficiaries over the telephone, referred to as "Telemedicine Company B," was a Delaware corporation authorized to transact business in Florida.

### The Conspiracy

11. From at least in or about September 2016 through in or about November 2018, in the Eastern District of Pennsylvania, and elsewhere, defendant

**RANDY LEE SWACKHAMMER**

knowingly conspired and agreed, with Telemedicine Company B, and others known and unknown to the United States Attorney, to commit an offense against the United States, that is: to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

12. While working as an independent contractor for Telemedicine Company B, defendant RANDY LEE SWACKHAMMER conspired with Telemedicine Company B, and others known and unknown to the United States Attorney, to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of Defendant SWACKHAMMER and his co-conspirators, and to further the fraud.

**Manner and Means of the Conspiracy**

13. Defendant RANDY LEE SWACKHAMMER falsely certified to Medicare that he would comply with all Medicare rules and regulations, and federal laws, including that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that he would refrain from violating the federal Anti-Kickback statute, which prohibits the knowing and willful payment of "remuneration" to induce or reward patient referrals or the generation of business involving any item or service payable by Federal health care programs.

14. Defendant RANDY LEE SWACKHAMMER obtained access to thousands of Medicare patients by executing an Independent Contractor Professional Services Agreement with Telemedicine Company B in which he agreed to work as a "Consulting Physician" that provided purported telemedicine consultations.

15. To recruit the patients, international calling centers, DME providers, and other patient recruiters targeted Medicare beneficiaries with advertising and used telemarketing to up-sell the elderly and disabled in order to get them to accept numerous "free or low-cost" DME braces, regardless of medical necessity.

16. Defendant RANDY LEE SWACKHAMMER received unsigned prescriptions for orthotics braces, including, but not limited to, knee braces, which were transmitted from Call Center Company A, Telemedicine Company B, and others for defendant SWACKHAMMER to sign. Defendant SWACKHAMMER signed the doctors' orders for braces regardless of medical necessity, in the absence of a pre-existing doctor-patient relationship, without a physical examination, and/or frequently based solely on a brief telephonic conversation with the Medicare beneficiary.

17. Defendant RANDY LEE SWACKHAMMER and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of medical records, including patient files, DME orders, and other records, all to support claims for the referral of DME that were medically unnecessary, not eligible for reimbursement, and/or not provided as represented.

18. Defendant RANDY LEE SWACKHAMMER and others submitted and caused the submission of false and fraudulent claims to Medicare in an amount in excess of approximately $5 million for orthotics that were medically unnecessary, not eligible for reimbursement, and/or not provided as represented.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 1349, set forth in this information, defendant

**RANDY LEE SWACKHAMMER**

shall forfeit to the United States of America any property, real or personal, that constitutes, or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense, including, but not limited to, the sum of $139,000.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

*for* _____
WILLIAM M. MCSWAIN
United States Attorney
Eastern District of Pennsylvania


JOSEPH BEEMSTERBOER
Deputy Chief
Criminal Division, Fraud Section